**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK FITZHENRY, on behalf of himself and others similarly situated, | ) ) | 1:13-cv-8708 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY DEMANDED |
| THE ADT CORPORATION (f/k/a ADT Security Services, Inc.) and SECURITY SOLUTIONS INC. | ) ) ) | |
| Defendants. | | |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1.      In 2011, counsel for the Plaintiff filed a Class Action Complaint against the Defendant The ADT Corporation (f/k/a ADT Security Services, Inc.) ("ADT") relating to the telemarketing activities of its authorized dealers alleged to be in violation of the Telephone Consumer Protection Act, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.[1] *See Desai v. ADT Security Services, Inc.*, United States District Court for the Northern District of Illinois (Eastern Division), Civil Action No. 11-cv-1925 (Bucklo, J.).

2.      After two years of litigation, the parties reached a class action settlement in *Desai v. ADT*, pursuant to which ADT agreed to change its corporate policies to prohibit authorized dealers from telemarketing via pre-recorded message.

3.      Unfortunately, this has not occurred and, at least one, ADT authorized dealer has continued to telemarket in violation of federal telemarketing law.

---

[1] *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

4.      Months following this settlement, and in violation of the TCPA, an ADT Authorized Dealer called Security Solutions, Inc. ("Security Solutions"), sent Plaintiff Mark Fitzhenry ("Plaintiff" or "Mr. Fitzhenry") a pre-recorded telemarketing call and subsequently tried to offer him ADT goods and services.

5.      Because the calls at issue were transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Fitzhenry brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls advertising ADT goods and services, for the time frame following the release that was received by ADT at the conclusion of the *Desai v. ADT* litigation.

6.      A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7.      Plaintiff Mark Fitzhenry is a resident of the state of South Carolina.

8.      Defendant The ADT Corporation (f/k/a ADT Security Services, Inc.) is a corporation traded on the New York Stock Exchange under the symbol "ADT" that is headquartered in Boca Raton, FL.

9.      Defendant Security Solutions, Inc. is an ADT Authorized Dealer, headquartered in Nashville, TN, which solicits new ADT subscribers from all over the country.

### Jurisdiction & Venue

10.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     This Court has personal jurisdiction in this manner because ADT does business throughout the United States, including within the State of Illinois. In addition, *ADT v. Desai* is still pending before Judge Bucklo of the Northern District as the previous class settlement did not resolve third party claims brought by ADT against other entities.  ADT therefore has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

12.     Venue is proper in the United States District Court for the District of Illinois as ADT is subject to personal jurisdiction in this district, and Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. *See* 28 U.S.C. § 1391.

### TCPA Background

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone
> calls, regardless of the content or the initiator of the message, to be a nuisance and
> an invasion of privacy.

. . . .

> Banning such automated or prerecorded telephone calls to the home, except
> when the receiving party consents to receiving the call[,] . . . is the only effective
> means of protecting telephone consumers from this nuisance and privacy
> invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

15.     The TCPA prohibits persons from initiating any telephone call to a residential

telephone line using a prerecorded voice to deliver a message without the prior express consent

of the called party, unless the call is initiated for emergency purposes or is exempted by rule or

order of the FCC.  47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

16.     For pre-recorded or auto-dialed telemarketing calls made to cell and landlines

after October 16, 2013, prior express consent must be evidenced by a signed writing (a) bearing

the signature of the person providing consent; (b) that specifies the telephone number to which

the person consenting is called; (c) clearly authorizes the company to call the person using an

auto dialer or prerecorded message for telemarketing purposes; and (d) providing consent is not

a condition of purchasing goods or services.  *See in the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991,* 27 FCC Rccd. 1830, 1844 ¶33.

(2012).

17.     Under the TCPA, a seller of a product or service may be vicariously liable for a

third-party marketer's violations of Section 227(b), even if the seller did not physically dial the

illegal call, and even if the seller did not directly control the marketer who did.  *In re Joint Pet.*

*filed by Dish Network*, *LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

18.     A seller is liable under Section 227(b) when it has authorized a telemarketer to

market its goods or services. *Id.* ¶ 47.

4

19.     Additionally, a seller may be vicariously liable for a Section 227(b) violation

under principles of apparent authority and ratification. Factors relevant to a finding of vicarious

liability include:

> a.     Whether "the seller allows the outside sales entity access to information
> and systems that normally would be within the seller's exclusive control,
> including . . . access to detailed information regarding the nature and
> pricing of the seller's products and services or to the seller's customer
> information;
>
> b.     Whether the outside sales entity can "enter consumer information into the
> seller's sales or customer systems;
>
> c.     Whether the outside sales entity has "the authority to use the seller's trade
> name, trademark and service mark;
>
> d.     Whether "the seller approved, wrote or reviewed the outside entity's
> telemarketing scripts"; and
>
> e.     "Whether the seller knew (or reasonably should have known) that the
> telemarketer was violating the TCPA on the seller's behalf and the seller
> failed to take effective steps within its power to force the telemarketer to
> cease that conduct."

*Id.* ¶ 46.

20.     The May 2013 FCC Ruling further held that, even in the absence of

evidence of a formal contractual relationship between the seller and the telemarketer, a

seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual)

authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

21.     The May 2013 FCC Ruling further clarifies the circumstances under

which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the
> outside sales entity access to information and systems that normally would be
> within the seller's exclusive control, including: access to detailed information
> regarding the nature and pricing of the seller's products and services or to the
> seller's customer information. The ability by the outside sales entity to enter
> consumer information into the seller's sales or customer systems, as well as the
> authority to use the seller's trade name, trademark and service mark may also be

relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

*Id.* at ¶ 46.

22.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. " *Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

<u>Factual Allegations</u>

**SECURITY SOLUTIONS'S CALL TO THE PLAINTIFF**

23.     Well over one year ago, Mr. Fitzhenry received a pre-recorded telemarketing call from Security Solutions promoting ADT's goods and services. He filed suit and that matter was ultimately resolved.

24.     As he had sued Security Solutions himself, and being aware of the class settlement in *Desai v. ADT,* Mr. Fitzhenry expected that these unwanted telemarketing calls promoting ADT security services would stop.

25.     However, on October 10, 2013, Plaintiff received another unwanted pre-recorded telemarketing call from Security Solutions, again, explicitly promoting ADT goods and services.

26.     The Caller ID on the call was (718) 737-7162.

27.     On that call, Plaintiff was informed:

    a.  The security system they were offering is ADT;
    b.  The monitoring would be done exclusively by ADT;
    c.  The telemarketing representative asked the Plaintiff if he had seen "our" (ADT's) commercials and flyers in the mail;
    d.  When the equipment is installed, it will include an ADT yard sign and window decal;

      e.   To find out more information about the promotion they were offering, the Plaintiff was instructed to visit www.adt.com, for more information;

      f.    ADT would be handling the billing of the account directly;

      g.   The call was being made by Security Solutions, an authorized ADT dealer.

28.     Security Solutions is an ADT Authorized Dealer.

29.     Security Solutions's website, http://www.securitysolutionstn.com/, identifies the company as an "ADT Authorized Dealer," displays the ADT corporate logo, and prominently states "ADT: The Most Trusted Name in Home Security."

30.     Since at least August of 2012, ADT had been aware of illegal telemarketing engaged in by Security Solutions.

## ADT'S AUTHORIZED DEALER PROGRAM AND HISTORY OF TCPA COMPLIANCE ISSUES

31.    ADT is the self-proclaimed world's largest provider of residential and commercial electronic security service, handling over seven million customers.

32.    ADT markets and distributes products via a distribution network of authorized dealers.

33.    ADT compensates each authorized dealer through a structure of commission payments based upon the amount of product and services sold.

34.    ADT allows its authorized dealers to market ADT's products and services, to display the ADT logo and to market using the ADT trade name.

35.    One of ADT's authorized dealers is Security Solutions, Inc., the same entity that made the pre-recorded telemarketing call to the Plaintiff.

36.    ADT has, at all times, had the right to control its authorized dealers as evidenced by the following facts:

a.   ADT's contracts with its dealers are form agreements prepared by ADT typically entitled "Authorized Dealer Agreement."

b.   Each ADT authorized dealer is given a set of standardized written procedures, entitled the "ADT Dealer Program Guidelines", which are referenced by and incorporated into the Authorized Dealer Agreement.

c.   Pursuant to these form contracts, ADT's authorized dealers agree to sell and install home security services to customers and then are *required* to "sell" these customer accounts exclusively to ADT, which then provides security monitoring services.

d.   Once an authorized dealer installs alarm equipment in a customer's home or office, the alarm system is connected by telephone lines to ADT's monitoring centers, which monitor the alarm equipment.

e.   All authorized dealers are instructed to market using the ADT name. In addition, ADT advertises through its website to its authorized dealers that "As an ADT Authorized Dealer, you can have the opportunity to capitalize on the power of the ADT name."

37.   ADT sells its security alarm systems through these authorized dealers and allows its dealers to hold themselves out to public as authorized ADT dealers.

38.   ADT promotes these systems through a variety of marketing methods, including telemarketing.

39.   ADT's contractual agreements with authorized dealers give dealers the authority to solicit consumers through means including telemarketing. ADT authorized dealers sell ADT security systems exclusively, using a variety of methods, including telemarketing.

40.   In 2007, the Federal Trade Commission ("FTC") brought a complaint against ADT and two of its authorized dealers for engaging in illegal telemarketing.

41.   The FTC alleged that ADT marketed its security systems directly to consumers and through authorized dealers, which used a variety of marketing techniques, including telemarketing.

42.    The FTC specifically alleged that ADT and/or its authorized dealers called consumers whose numbers were on the Do Not Call Registry in violation of the Telemarketing Sales Rule, 16 C.F.R. 310.4(b)(1)(iii).

43.    In November of 2007, ADT and the FTC entered into a Consent Decree and Order for Civil Penalties ("Consent Decree").

44.    As part of the Consent Decree with the FTC, ADT agreed

- To conduct a reasonable due diligence investigation to ensure that its authorized dealers had established and actively enforced telemarketing policies and procedures;

- To have a written contract with authorized dealers engaged in telemarketing on ADT's behalf that specifically included provisions relating to telemarketing compliance;

- To monitor outbound telemarketing campaigns conducted by its authorized dealers;

- To cease doing business with an authorized dealer after becoming aware that the authorized dealer was engaged in telemarketing in violation of the TSR;

45.    By entering into the Consent Decree, ADT acknowledged that it had both the ability and the duty to control the actions of its authorized dealers to ensure compliance with telemarketing law.

46.    The FTC Consent Decree further specifically enjoined ADT from failing to monitor its authorized dealers, and from doing business with authorized dealers who ADT knew or should have known were engaged in illegal telemarketing.

47.    While the Consent Decree was still in effect, ADT was sued by a number of individuals related to the telemarketing activities.

48.    ADT was also subject of a class action lawsuit, related to illegal telemarketing conducted by its authorized dealers, which was filed in 2011.

49.     In that case, Plaintiff alleged that ADT, through its authorized dealers, made millions of illegal telemarketing calls.

50.     ADT resolved that matter by making a payment of $15,000,000 into a common fund, where class members could submit claims.

51.     As ADT has failed to effectively end the illegal telemarketing engaged in by its dealers, Plaintiff brings this putative class action.

**Class Action Allegations**

52.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

53.     The class of persons Plaintiff proposes to represent is tentatively defined, subject to modification after discovery and case development:

> All persons within the United States whom (a) ADT, through their agents, played a pre-recorded message during a telephone call the purpose of which was to sell ADT goods or services (or develop "leads" for such sales) from June 22, 2013 ongoing, and (b) and who did not previously give such number to ADT, or their agents with permission to be contacted.

Collectively, all these persons will be referred to as "Class members."

42.     Class members are identifiable through phone records and phone number databases.

43.     Given the nature of the automated technology used to transmit pre-recorded telemarketing calls, the potential class members number at least in the thousands.  Individual joinder of these persons is impracticable.

44.     Plaintiff is a member of the class.

45.     The Plaintiff and the class have all been harmed by the actions of the Defendants.

46.     This Class Action Complaint seeks injunctive relief and monetary damages.

47.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.  Whether the Defendants violated the TCPA by advertising via unsolicited prerecorded telemarketing calls;
b.  Whether the Defendants can meet their burden of proof with respect to statutory defenses for the telemarketing calls;
c.  Whether the Defendants conduct was knowing and/or willful;
d.  Whether the Plaintiffs and the class members are entitled to statutory damages as a result of Defendants' actions;
e.  Whether Defendants should be enjoined from engaging in such conduct in the future.

48.     Plaintiff is an adequate representative of the class because his interests do not conflict with class member interests, he will fairly and adequately protect class member interests, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

49.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and their agents.

50.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

51.     The interest of the Class members in individually pursuing claims against the Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendants from engaging in the same behavior in the future.

52.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

53.     The Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

54.     Plaintiff is unaware of litigation concerning this controversy already commenced by others who meet the proposed class definition.

## CAUSES OF ACTION

## FIRST COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

55.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

56.     The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

57.     As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute.

58.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

## SECOND COUNT

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §  227 *ET SEQ.*

59.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

61.     As a result of the Defendants' violations of 47 U.S.C. §  227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute.

62.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

1.     That Defendants be restrained from engaging in future telemarketing in violation of the TCPA.

2.     That Defendants, and its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

3.     That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure.

4.     That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation.

5.      That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
MARK FITZHENRY
By his attorneys,

/s/ Alexander E. Burke

| | |
|---|---|
| Alexander E. Burke | John W. Barrett |
| Burke Law Offices, LLC | Jonathan Marshall |
| 155 N. Michigan Ave., Suite 9020 | Bailey & Glasser, LLP |
| Chicago, IL 60601 | 209 Capitol Street |
| (312) 729-5288 | Charleston, WV 25301 |
| (312) 729-5289 facsimile | (304) 345-6555 |
| ABurke@BurkeLawLLC.com | (304) 342-1110 facsimile |
| | jbarrett@baileyglasser.com |
| | jmarshall@baileyglasser.com |
| | *Subject to Pro Hac Vice Admission* |

| | |
|---|---|
| Brian K. Murphy | Edward A. Broderick |
| Joseph F. Murray | Anthony Paronich |
| Murray Murphy Moul + Basil LLP | Broderick Law, P.C. |
| 1533 Lake Shore Drive | 125 Summer St., Suite 1030 |
| Columbus, OH  43204 | Boston, MA  02110 |
| (614) 488-0400 | (617) 738-7080 |
| (614) 488-0401  facsimile | ted@broderick-law.com |
| murphy@mmmb.com | anthony@broderick-law.com |
| | *Subject to Pro Hac Vice Admission* |

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave, Third Floor
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice Admission*

DOCUMENT PRESERVATION DEMAND

Plaintiff demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls for purposes of marketing State Farm products or services (e.g. call detail and/or dialer records), the events described herein, any third party associated with any such telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim and discoverable. If defendant is aware of any third party that has possession, custody or control of any such materials that may be discoverable, such as ADT agents, phone companies, dialer companies including but not limited to YTel and Five9 (if applicable), lead generators (including but not limited to Variable Marketing, LLC, Instant Insurance Transfers, Insurance Leads in Real Time if applicable), telemarketers, outbound voice message companies (e.g. CallAssistant), plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.